[Doc. No. 32]

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

| | |
|---|---|
| BRAD GARDNER and DENISE CASTALDI,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>NORFOLK SOUTHERN CORPORATION, et al.,<br><br>　　　　　Defendants. | Civil No. 13-6912 (JEI/AMD) |

**MEMORANDUM OPINION AND ORDER**

In this personal injury action, Defendants move pursuant to Federal Rule of Civil Procedure 26(c) to defer production of surveillance materials until after Plaintiffs' depositions. In opposition, Plaintiffs assert that any surveillance materials constitute substantive evidence to which Plaintiffs are immediately entitled in accordance with their discovery requests. The Court decides this matter pursuant to Federal Rule of Civil Procedure 78(b).[1] For the reasons set forth herein, the Court denies Defendants' motion, and orders that

---

[1] At a telephone conference on February 11, 2014, the parties waived oral argument with respect to the pending motion.

Defendants produce all surveillance materials responsive to Plaintiffs' discovery requests by no later than April 30, 2014.

Plaintiffs Brad Gardner and Denise Castaldi (hereinafter, "Plaintiffs") initiated this personal injury action against Norfolk Southern Corporation, Norfolk Southern Railway Company, and Consolidated Rail Corporation a/k/a Conrail (hereinafter, "Defendants") on June 19, 2013 in the Eastern District of Pennsylvania. (See Complaint and Jury Demand [Doc. No. 1].) Plaintiffs generally allege that on June 21, 2011 their motorcycle struck Defendants' "dangerous and deteriorated railroad roadway crossing[.]" (Id. at ¶ 8.) Plaintiffs further allege that Defendants "failed to take any and all appropriate action to protect or prevent the Plaintiffs and the general public" from harm, notwithstanding Defendants' notice of the alleged condition. (Id. at ¶¶ 8-9.) Plaintiffs seek monetary damages for the "severe and permanent injuries requiring medical treatment[.]" (See id. at ¶¶ 13, 18.)

Plaintiffs served their first set of interrogatories and requests for the production of documents on July 23, 2013. (See Defendants, Norfolk Southern Corporation, Norfolk Southern Railway Company, and Consolidated Rail Corporation a/k/a Conrail, Motion for Protective Order (hereinafter, "Defs.' Br.") [Doc. No. 32], 4 on the docket, ¶ 3; see also Exhibit A [Doc No. 32-1], 1-8 on the docket; Exhibit B [Doc. No. 32-1], 9-13 on the

docket.) Plaintiffs' discovery requests generally sought information concerning "sound, photographic, motion picture film, personal sight[,] or any other type of surveillance" of Plaintiffs, and requested production of any and all such "photographs, diagrams, drawings, charts, models, movie films or video-tapes[.]" (Defs.' Br. [Doc. No. 32], 5 on the docket, ¶ 3; see Exhibit A [Doc. No. 32-1], 7-8 on the docket; Exhibit B [Doc. No. 32-1], 12 on the docket.) On September 30, 2013, Defendants provided photographs and a diagram of the disputed railway roadway crossing, but objected to the provision of any information concerning "the existence" of video (surveillance or otherwise). (Exhibit D [Doc. No. 32-2], ¶ 20.) Shortly thereafter, the Eastern District of Pennsylvania granted Defendants' motion to transfer this action to the District of New Jersey on October 3, 2013. (See Order [Doc. No. 18], Oct. 3, 2013, 1.) The pending motion followed on January 3, 2014. (See generally Defs.' Br. [Doc. No. 32].)

Defendants generally assert that production of any surveillance should be delayed pending Plaintiffs' depositions in order to preserve "the impeachment value" of the surveillance. (Defs.' Br. [Doc. No. 32], 5.) Defendants argue that the "overwhelming majority of federal courts that [have] decided this *specific* issue agree that the defense 'must be given an opportunity to depose the plaintiff fully as to his

3

injuries, their effects and his present disabilities' before disclosing the details of surveillance." (Defendants, Norfolk Southern Corporation, Norfolk Southern Railway Company, and Consolidated Rail Corporation a/k/a Conrail, Reply in Support of its Motion for Protective Order (hereinafter, "Defs.' Reply") [Doc. No. 35], 3 on the docket (emphasis in original) (citations omitted).) Defendants cite a litany of nonbinding precedent in which courts have permitted deferred production of surveillance recordings pending completion of relevant depositions. (See Defs.' Reply [Doc. No. 35], 3 on the docket (citing cases).) For example, Defendants cite Snead v. American Export-Isbrandtsen Lines, Incorporated, 59 F.R.D. 148 (E.D. Pa. 1973) to support their assertion that a party may delay production of any details concerning surveillance. (See Defs.' Reply [Doc. No. 35], 3 on the docket (citing cases).) In Snead, a three-judge panel considered whether the circumstances of a personal injury action warranted deferred production of "secret motion pictures taken to reveal the true nature and extent of plaintiff's injuries" pending plaintiff's deposition. 59 F.R.D. 148, 149 (E.D. Pa. 1973). The court concluded that "the defense must be given an opportunity to depose the plaintiff fully as to his injuries, their effects, and his present disabilities" prior to "requiring the defense to disclose the existence of surveillance films" to plaintiff in order to facilitate effective impeachment. Id. at

4

151. Accordingly, Defendants request an "Order protecting disclosure of surveillance information and items until after the conclusion of [P]laintiffs' depositions." (Defs.' Br. [Doc. No. 32], 6; Defs.' Reply [Doc. No. 35], 6 on the docket.)

In opposition to Defendants' motion, Plaintiffs assert that surveillance material "provides substantive evidence of the extent a plaintiff's injuries, often corroborating rather than impeaching the plaintiff's claims." (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Protective Order (hereinafter, "Pls.' Br.") [Doc. No. 33], 9 on the docket.) Plaintiffs further assert that the "substantive value" of the "surveillance items" outweighs any potential impeachment value, and precludes Defendants from "unilaterally withhold[ing] such materials even temporarily." (Id. at 7 on the docket.) In support of their position, Plaintiffs rely upon Babyage.com, Incorporated v. Toys "R" Us, Incorporated, 458 F. Supp. 2d 263 (E.D. Pa. 2006). In Babyage.com, defendant moved to compel the production of "surreptitious" recordings by plaintiff of conversations between the parties. Id. at 264. The plaintiff in Babyage.com conceded the recordings' discoverability, but sought permission to delay production of the recordings until after the deposition of defendant's representative in order to preserve the recordings' impeachment value. Id. at 264-65. Guided by "the underlying purpose of the civil discovery rules[,]" the

5

Babyage.com court noted that "impeachment value alone does not justify a delay where, as [there], the disputed statements constituted substantive evidence relevant to the parties' claims and defenses." Id. at 264-65. The Babyage.com court concluded that "plaintiffs are not entitled to unilaterally withhold the recordings and transcripts, even temporarily" and therefore ordered immediate production. Id. at 266.

Federal Rule of Civil Procedure 26(c) provides in relevant part that the Court may, for good cause issue an order "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; [or] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" FED. R. CIV. P. 26(c)(1)(A), (B), (C), (D). The party seeking a protective order "bears the burden of demonstrating" good cause to support such limitation, and must further "demonstrate a 'particular need for protection.'" Graham, 2010 WL 2483294, at *2 (quoting Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)). "'Open discovery is the norm. Gamesmanship with information is discouraged and surprises are abhorred.'" Kosher Sports, Inc. v. Queens Ballpark Co., LLC, No. 10-2618, 2011 WL 3471508, at *8

(E.D.N.Y. Aug. 5, 2011) (quoting Costa v. AFGO Mech. Servs., Inc., 237 F.R.D. 21, 26 (E.D.N.Y. 2004) (citation omitted)).

At issue in this case is surveillance of Plaintiffs obtained by Defendants after the incident that gives rise to Plaintiffs' claims. The Court is therefore not confronted with contemporaneous footage of the accident—the type of "surveillance" materials routinely found discoverable. See Inferrera v. Wal-Mart Stores, Inc., No. 11-5675, 2011 WL 6372340, at *3 (D.N.J. Dec. 20, 2011) (finding no good cause to delay production "of a tape prepared in the regular course of its business"). Rather, the Court must consider whether a party may delay production of images, films, and/or photographs taken surreptitiously after the incident.

Case law has reached various outcomes concerning the discoverability and the timing of the production of these types of materials. Some courts have considered whether the surveillance possessed solely impeachment, rather than substantive, value in determining whether a party may delay production until after a plaintiff's deposition. See Newsome v. Penske Truck Leasing Corp., 437 F. Supp. 2d 431, 435-438 (D. Md. 2006) (noting the distinction which has emerged with respect to surveillance evidence). In Bachir v. Transoceanic Cable Ship Company, No. 98-4625, 1998 WL 901735 (S.D.N.Y. Dec. 28, 1998), the court referenced the distinction between surveillance

7

videotapes used as "'substantive evidence'" and those used solely for "'impeachment'" purposes. Id. at *1 (quoting Brannan v. Great Lakes Dredge & Co., No. 96-4142, 1998 WL 229521 (S.D.N.Y. May 7, 1998)). The Bachir court concluded that surveillance must be immediately produced if a party intends to use such tapes "for any purpose beyond impeachment." Id. at *1. If, however, a party intends to use such tapes "for the purpose of impeachment only," then the production of the video tape surveillance may be delayed until the "after the date" of plaintiff's deposition." Id. at *2. In Daniels v. National Railroad Passenger Corporation, 110 F.R.D. 160 (S.D.N.Y. 1986), the court similarly concluded that it may be appropriate, under certain circumstances, "to require disclosure of [] impeachment materials only after the depositions of the plaintiff or other witnesses to be impeached, so that their testimony may be frozen[.]" Id. at 161.

Other courts, however, have found surveillance evidence discoverable despite a party's intention to rely upon the surveillance materials for impeachment purposes only. See Gutshall v. New Prime, Inc., 196 F.R.D. 43, 46 (W.D. Va. 2000) (granting plaintiff's motion to compel production of surveillance evidence intended solely for impeachment purposes); see also Babyage.com, 458 F. Supp. 2d at 266 (granting defendants' motion to compel production of secret recordings

8

because the recordings constituted "substantive evidence relevant to the parties' claims and defenses"). In Gutshall, for example, the court addressed the discoverability of a surveillance film taken of the plaintiff subsequent to the event that gave rise to his complaint. Id. at 44. The court noted the paucity of authority on the issue, but found that evidence bearing "on the plaintiff's physical condition" constituted "relevant" and "discoverable" evidence in the context of the litigation, notwithstanding defendant's intent "to use such evidence at trial for [solely] impeachment purposes." Id. at 45. Indeed, the Court noted that, "'[w]hile surprise has a healthy prophylactic effect against possible perjury, on balance, cases are more likely to be decided fairly on their merits if the parties are aware of all the evidence[,]'" and therefore ordered immediate production of the surveillance footage. Id.

Certain other courts have weighed the challenged material's substantive value against any impeachment value to be derived from delayed production. See, e.g., Louisma v. Automated Fin., LLC, No. 11-2104, 2011 WL 5105377, at *3 (N.D. Ill. Oct. 27, 2011) ("Where the substantive value of the challenged material outweighs its impeachment value, the production should not be delayed until after depositions."). However, in conducting the necessary balancing, courts have noted that surveillance evidence "rarely fits into a single category," and

9

have ordered production prior to the plaintiff's deposition where the intended use extended beyond mere impeachment. Dehart v. Wal-Mart Stores, East, L.P., No. 05-061, 2006 WL 83405, at *1 (W.D. Va. Jan. 6, 2006) (ordering production of the surveillance evidence prior to the deposition of plaintiff because the evidence constituted "both substantive as well as impeachment evidence"); see also Karr v. Four Seasons Mar., Ltd., No. 02-3413, 2004 WL 797728, at *5-*6 (E.D. La. Apr. 12, 2004) (requiring production of surveillance tapes where the court could not conclude "that the surveillance information requested" would be "limited exclusively to impeachment with no other relevance to the case").

Here, Defendants gives short shrift to whether the requested materials are relevant for substantive value.[2] (Defs.' Br. [Doc. No. 32], 5 ¶ 10.) As set forth supra, Plaintiffs assert that the materials constitute substantive evidence to which they are presently entitled. (Pls.' Br. [Doc. No. 33], 9 on the docket.) This Court, however, rejects the staggered production of discoverable surveillance. Rather, the Court

---

[2] Defendants specifically assert that "production of the surveillance after plaintiffs' deposition comports with fundamental notions of fairness to *both* parties" because "it preserves the impeachment value of the surveillance" while "still allow[ing] the plaintiff(s) sufficient time before trial to evaluate the surveillance video to determine its authenticity and accuracy or to prepare for its substantive use at trial." (Defs.' Br. [Doc. No. 32], 5 ¶ 10 (emphasis in original).)

10

follows the rationale set forth in Gutshall v. New Prime, Incorporated, and concludes that because the surveillance evidence directly relates to Plaintiffs' physical conditions, it constitutes evidence relevant to the subject matter of this action, and discoverable pursuant to the standards set forth in Federal Rule of Civil Procedure 26. 196 F.R.D. at 45. Indeed, Federal Rule of Civil Procedure 26 creates "a broad vista for discovery."[3] Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc., 92-1 F.R.D. 371, 375 (D.N.J. 1981). The Court further concludes that permitting parties to delay production of this relevant evidence requested in the context of the parties' discovery requests would nullify the discovery process. "[F]airness concerns weigh against the kind of sandbagging involved when the moving party sets up grounds for impeachment by using undisclosed materials in an attempt to manufacture inconsistencies." Louisma, 2011 WL 5105377, at *3. These concerns therefore "militate against [any] proposed protective order." Id. (denying the motion for a protective order, in light of "the substantive value of the

---

[3] Although Federal Rule of Civil Procedure 26(a) excepts from the parties' initial disclosure obligations information "solely for impeachment" purposes, Federal Rule of Civil Procedure 26(b) provides no similar exception. Compare Fed. R. Civ. P. 26(a)(1)(B), (a)(3), with Fed. R. Civ. P. 26(b)(1). A party must therefore "disclose impeachment evidence in response to a specific discovery request." Newsome, 437 F. Supp. 2d at 436. As set forth supra, Plaintiffs expressly request the disputed surveillance materials in their discovery requests. (See Exhibit A [Doc. No. 32-1], 2-8 on the docket; Exhibit B [Doc. No. 32-1], 10-13 on the docket.)

withheld photographs"). Defendants in this instance have failed to demonstrate circumstances sufficient to defer production of discoverable information. See Bradley v. Liberty Mut. Grp., Inc., No. 13-100, 2013 WL 3864316, at *3 (M.D. La. July 24, 2013) (requiring defendant to produce the surveillance evidence prior to plaintiff's deposition). The Court therefore denies Defendants' motion and directs Defendants to produce the withheld surveillance materials by no later than April 30, 2014.

Consequently, for the reasons set forth herein, and for good cause shown:

IT IS on this 17th day of April 2014,

**ORDERED** that Defendants' motion for a protective order [Doc. No. 32] shall be, and hereby is, **DENIED**; and it is further

**ORDERED** that the Defendants shall, by **April 30, 2014**, produce any withheld surveillance materials responsive to Plaintiffs' requests.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Joseph E. Irenas